1

2

3

4

5

6                        **UNITED STATES DISTRICT COURT**

7                        **EASTERN DISTRICT OF CALIFORNIA**

8

9    LOURDES RICO,                              Case No.  1:19-cv-01146-SKO

10                    Plaintiff,
                                                **ORDER ON PLAINTIFF'S SOCIAL**
11        v.                                     **SECURITY COMPLAINT**

12   ANDREW SAUL,                                (Doc. 1)
     Commissioner of Social Security,
13

14                    Defendant.
     _____/
15

16

17                        **I.      INTRODUCTION**

18        On August 21, 2019, Plaintiff Lourdes Rico ("Plaintiff") filed a complaint under U.S.C. §§

19   405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social

20   Security (the "Commissioner" or "Defendant") denying her applications for Disability Insurance

21   Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the

22   "Act").  (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were

23   submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate

24   Judge.[1]

25

26

27   _____

28   [1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 7, 8.)

## II.    BACKGROUND

Plaintiff was born on May 15, 1969.  (Administrative Record ("AR") 293.)  She completed school through the sixth grade and has past work experience as a "packer."  (AR 298.)  Plaintiff protectively filed an application for DIB payment on September 8, 2015, and for SSI payment on September 9, 2015.  (AR 239, 249.)  She alleged that she became disabled on May 14, 2014, due to hand numbness, arthritis in her right knee, depression, and pain in her shoulders and hip.[2]  (AR 76, 249, 297.)  Plaintiff was forty-two years old as of the alleged onset date.  (AR 293.)

### A.    Relevant Medical Evidence[3]

#### 1.    Consultative Examiner Max Moses, M.D.

On January 24, 2014, Dr. Moses, an orthopedic surgeon, performed an "agreed medical-legal evaluation" of Plaintiff as part of a worker's compensation case.  (AR 403–21.)  Plaintiff had an average grip strength of 10 kilograms in her right hand and 17.3 kilograms in her left hand.  (AR 411.)  Dr. Moses found that Plaintiff had "[m]arked limitations" in her right shoulder's range of motion and relative weakness of the shoulder in all six directions.  (AR 411, 413.)  Dr. Moses opined that Plaintiff was "not at maximal medical improvement," which was "anticipated in another six months," and Plaintiff could work with "no use of the right upper extremity."  (AR 413, 414.)

On November 7, 2014, Dr. Moses conducted a re-evaluation of Plaintiff.  (AR 423–40.)  Dr. Moses noted that Plaintiff's range of motion had improved but was still limited.  (AR 430, 431.)  Dr. Moses opined that Plaintiff: could lift five pounds frequently with both upper extremities and ten pounds occasionally; was able to work using her right upper extremity "as a minimal assist"; could not engage in repetitive activities with either the left or right upper extremity; and should avoid working above shoulder level.  (AR 433.)

#### 2.    Michael Azevedo, M.D.

On May 27, 2015, Plaintiff presented to Dr. Azevedo for care.  (AR 465.)   Upon examination, Dr. Azevedo noted that Plaintiff's active range of motion ("AROM") in abduction and

---

[2] Plaintiff initially alleged in her DIB and SSI applications that she became disabled on February 1, 2013.  (AR 239, 249.)  At the hearing before the ALJ, Plaintiff amended the alleged onset date to May 14, 2014.  (AR 76.)

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

flexion was 40-60 degrees, and her active assisted range of motion ("AAROM") was only 70-90 degrees "due to exaggerated complaints of pain as the range of motion within the degrees obtained were free of any restriction." (AR 465.) Plaintiff also had 4/5 strength in her right upper extremity proximally and "3-4/5" distally due to pain. (AR 465.) Treatment notes from July 14, 2015 were largely unchanged. (AR 460.)

### 3. Consultative Examiner Lakshmanaraju Raju, M.D.

On January 5, 2016, Dr. Raju, a primary care physician, conducted an internal medicine evaluation of Plaintiff. (AR 554–59.) Upon examination, Dr. Raju noted that Plaintiff "resents any handling at all" in her right shoulder, "partly because of lack of effort." (AR 557.) Dr. Raju also found a reduced range of motion in Plaintiff's right upper extremity. (AR 557.) Dr. Raju assessed Plaintiff's residual functional capacity ("RFC")[4], opining that Plaintiff was: limited to lifting and carrying thirty pounds occasionally and twenty pounds frequently with the left upper extremity; unable to lift or carry any weight with her right upper extremity; and incapable of performing manipulative activities with her right hand because of the pain in her right shoulder. (AR 559.)

### 4. State Agency Physician A. Khong, M.D.

On May 4, 2016, Dr. Khong, a Disability Determinations Service medical consultant, reviewed the record and opined that Plaintiff could lift or carry twenty pounds occasionally and ten pounds frequently, with no frequent above-shoulder reaching with her right upper extremity.[5] (AR 133, 135.) Dr. Khong also opined that Plaintiff had no limitations on handling (gross manipulation) and fingering (fine manipulation). (AR 134.)

### 5. Kevin Lester, M.D.

On March 21, 2016, Dr. Lester saw Plaintiff for pain in her right shoulder. (AR 595.) Physical examination revealed that Plaintiff had a full range of motion in her shoulder, but pain

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).
[5] Dr. Khong's review was undertaken at the reconsideration level. (AR 107.)

3

1    through abduction was noted.  (AR 595.)  Internal and external rotation of the shoulder was full and

2    unimpeded.  (AR 595.)  Plaintiff also had normal muscle tone and 5/5 strength in her right upper

3    extremity.  (AR 595.)  Treatment notes from April 4, 2016, and October 31, 2016 remained largely

4    unchanged.  (AR 589–90, 594.)

5                **6.    Debbie McBride, N.P.**

6        On May 25, 2016, Plaintiff saw McBride, a nurse practitioner ("N.P."), for a weight

7    consultation.  (AR 710.)  During that visit and subsequent visits, N.P. McBride noted that Plaintiff

8    was in no acute distress.  (*See* AR 710–70.)

9                **7.    Khalid Rauf, M.D.**

10       On November 1, 2016, Plaintiff presented to Dr. Rauf at the Fresno Sleep Wake Center for

11   sleep-related problems.  (AR 855.)  Plaintiff informed Dr. Rauf that she falls sleep while playing

12   with her tablet and also feels sleepy while sewing.  (AR 855.)  During follow-up visits through

13   March 2018, Dr. Rauf noted that Plaintiff reported being able to perform her activities of daily

14   living, and, upon examination, Dr. Rauf did not find any muscle atrophy or weakness.  (*See* AR

15   777–856.)

16               **8.    Carlos Juarez, M.D.**

17       On May 23, 2017, Plaintiff presented to Dr. Juarez for a follow-up appointment after her

18   sleeve gastrectomy.  (AR 609.)  Dr. Juarez noted that Plaintiff was continuing to lose weight.  (AR

19   609.)  Plaintiff reported that she was exercising regularly.  (AR 609.)

20               **9.    Consultative Examiner Joseph Serra, M.D.**

21       On December 13, 2017, Plaintiff underwent a comprehensive orthopedic evaluation with Dr.

22   Serra, an orthopedic surgeon.  (AR 573–76.)  Plaintiff reported to Dr. Serra that she "works around

23   the house doing housework and also cooking," primarily using her left hand.  (AR 573.)  Plaintiff

24   also stated that she was not actively driving any distance, "perhaps only one or two blocks."  (AR

25   574.)  Upon examination of Plaintiff's right upper extremity, Dr. Serra found no atrophy and 2/5

26   motor strength.  (AR 575.)  Dr, Serra noted that Plaintiff could not "tolerate even the lightest touch

27   anywhere around her right shoulder or scapula, and "[s]ubjective complaints are considered far

28   outweighing objective findings."  (AR 575.)  Dr. Serra opined that Plaintiff could: lift, carry, push,

and pull ten pounds both occasionally and frequently, "due to the inability to use the right upper extremity"; perform handling, fingering, and feeling; and never reach overhead and forward with the right upper extremity.  (AR 576.)

### 10.      Sunrise Hospital and Medical Center

On December 19, 2017, Plaintiff was admitted to the emergency room for an asthma attack at Sunrise Hospital and Medical Center in Las Vegas.  (AR 888–89, 896.)

### 11.      Consultative Examiner James P. Murphy, Ph.D.

On December 18, 2018, Dr. Murphy performed a psychiatric evaluation of Plaintiff at the request of the Department of Social Services.  (AR 547.)  When asked about how she spent her day, Plaintiff stated that she watched television, went for walks, talked to her friend on the telephone, and visited with family members.  (AR 548.)

### 12.      Joseph Idoni, M.D.

Dr. Idoni was Plaintiff's primary care physician at the Sanger Walk-In Clinic.[6]  (AR 336; *see* AR 503–43, 565–71, 618–54.)  On February 6, 2013, Plaintiff complained of back pain and right arm pain for two weeks.  (AR 533.)  During several subsequent visits from March 2014 through December 2017, Plaintiff reported lower back pain.  (*See* AR 502–03, 506, 510, 517, 520–21, 621–22, 642–43, 648–49).

On January 3, 2018, Dr. Idoni submitted a medical source statement on Plaintiff's behalf.  (AR 584–87.)  Dr. Idoni listed Plaintiff's diagnoses as back pain, shoulder pain, and sciatica, and he also checked a box on the medical source statement form indicating that Plaintiff had a somatoform disorder.  (AR 584.)  Dr. Idoni opined that Plaintiff could frequently lift and carry up to ten pounds.[7]  (AR 586.)  Dr. Idoni checked a box indicating that Plaintiff did not have any significant limitations with reaching, handling, or fingering, but in response to a subsequent question, he wrote that Plaintiff could grasp, turn, perform fine manipulation, and reach overhead

---

[6] Plaintiff indicated in a "Disability Report – Appeal" form that she had been seeing Dr. Idoni for "years."  (AR 336.) Dr. Idoni is identified as the "ordering physician" or provider on various medical reports from 2013 to 2017 in the record.  (*See, e.g.*, AR 539–40, 543, 565, 632.)

[7] "Frequently" is defined as thirty-four percent to sixty-six percent of an eight-hour working day; "occasionally" is defined as six percent to thirty-three percent of an eight-hour working day; and "rarely" is defined as one percent to five percent of an eight-hour working day.  (AR 586.)

only five percent of the time and could reach in front of herself ten percent of the time bilaterally. (AR 586.)  Dr. Idoni also wrote "subjective" next to some of his opined limitations on the questionnaire.  (AR 585, 586.)

### B.   Plaintiff's Testimony

The Commissioner initially denied Plaintiff's applications for SSI and DIB benefits on February 16, 2016.  (AR 142.)  Plaintiff's application for DIB benefits was denied again on reconsideration on June 2, 2016.  (AR 153.)  Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ").  (AR 160.)  At the hearing on April 11, 2018, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions.  (AR 63–80.)

Plaintiff testified that she is unable to work because her right hand, her dominant hand, does not have any strength, causing her to "drop everything."  (AR 69.)  She also has "no strength" in her "whole arm."  (AR 69–70.)  Plaintiff stated that she is unable to cook or drive, and her family assists her with household chores.  (AR 70–71.)  Plaintiff can dust tables and lamps, heat up food using the microwave, and wash her hair on her own using her left hand.  (AR 70.)  When the ALJ asked Plaintiff if she was able to lift her right arm up, Plaintiff lifted her arm straight out in front of her, at chest level, but was unable to reach any higher due to pain in her right shoulder.  (AR 71–72.)

### C.   The ALJ's Decision

In a decision dated August 15, 2018, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 39–56.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.  (AR 41–56.)  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 14, 2014, the onset date (step one).  (AR 41.)  At step two, the ALJ found Plaintiff's following impairments to be severe: right shoulder acromioclavicular degenerative joint disease and impingement with history of shoulder arthroscopy, obesity, and degenerative disc disease.  (AR 41.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 44.)

1 The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and

2 five.  *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your

3 residual functional capacity . . . . We use this residual functional capacity assessment at both step

4 four and step five when we evaluate your claim at these steps.").  The ALJ determined that Plaintiff

5 had the RFC:

6
> to perform light work as defined in 20 CFR [§] 416.967(b) except she can lift and/or
7
> carry up to 20 pounds occasionally, 10 pounds frequently.  She can stand/walk/sit
> more than 6 hours in an 8 hour workday, frequently climb ramps or stairs and
8
> occasionally climb ladders, ropes or scaffolds.  She can frequently stoop, crouch or
> crawl and occasionally reach overhead with the right upper extremity.  [Plaintiff] is
9
> illiterate but able to communicate in English.

10 (AR 44–45.)[8]  Although the ALJ recognized that Plaintiff's impairments "could reasonably be

11 expected to cause the alleged symptoms[,]" she rejected Plaintiff's subjective testimony as "not

12 entirely consistent with the medical evidence and other evidence in the record."  (AR 45.)

13 The ALJ determined that, given her RFC, Plaintiff was not able to perform her past relevant

14 work as a hand packager (step four).  (AR 54.)  The ALJ ultimately concluded that Plaintiff was not

15 disabled because Plaintiff could perform a significant number of other jobs in the national economy,

16 specifically housekeeping cleaner, can-filling-and-closing-machine tender, and subassembler (step

17 five).  (AR 55–56.)

18 On August 15, 2018, Plaintiff sought review of the ALJ's decision before the Appeals

19 Council.  (AR 11.)  On May 1, 2019, the Appeals Council denied review.  (AR 11–13.)  Therefore,

20 the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

21 ### III. LEGAL STANDARDS

22 ### A. Applicable Law

23 An individual is considered "disabled" for purposes of disability benefits if he or she is

24 unable "to engage in any substantial gainful activity by reason of any medically determinable

25 physical or mental impairment which can be expected to result in death or which has lasted or can

26

27 [8] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up
to 10 pounds.  20 C.F.R. § 404.1567(b).  Although the weight lifted may be very little, a job is in this category when it
28 requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling
of arm or leg controls.  *Id.*

be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).

However, "[a]n individual shall be determined to be under a disability only if his physical or mental

impairment or impairments are of such severity that he is not only unable to do his previous work

but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy."  *Id.* at § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining

whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180

F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The

Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial
> gainful activity.  If so, the claimant is not disabled.  If not, the ALJ proceeds to step
> two and evaluates whether the claimant has a medically severe impairment or
> combination of impairments.  If not, the claimant is not disabled.  If so, the ALJ
> proceeds to step three and considers whether the impairment or combination of
> impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P,
> [a]pp. 1.  If so, the claimant is automatically presumed disabled.  If not, the ALJ
> proceeds to step four and assesses whether the claimant is capable of performing her
> past relevant work.  If so, the claimant is not disabled.  If not, the ALJ proceeds to
> step five and examines whether the claimant has the [RFC] . . . to perform any other
> substantial gainful activity in the national economy.  If so, the claimant is not
> disabled.  If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also* 20 C.F.R. § 416.920(a)(4) (providing

the "five-step sequential evaluation process" for SSI claimants).  "If a claimant is found to be

'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent

steps."  *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of

the analysis."  *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir.

1989)).  "However, if a claimant establishes an inability to continue [his] past work, the burden

shifts to the Commissioner in step five to show that the claimant can perform other substantial

gainful work."  *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when

the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Circ. 2008) (quoting *Robbins v. Social Sec. Admin.*, 466 F.3d

880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends that the ALJ erred in her evaluations of Plaintiff's testimony about the severity of her right upper extremity impairments and four medical opinions.  For the reasons stated below, the Court disagrees.

### A.   The ALJ's Evaluation of Plaintiff's Testimony

#### 1.   Legal Standard

In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ must engage in a two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged.  *Id*.  The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)).  If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.  *Id*.  As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009).  Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Light v. Social*

*Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'"  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  General findings are not sufficient to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'"  *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

## 2.    Analysis

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms."  (AR 45.)  The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 45.)  Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding.  *See Vasquez*, 572 F.3d at 591.  Here, the ALJ determined that Plaintiff's credibility was undermined by: (1) two physicians' notations of Plaintiff's lack of effort or exaggeration at examinations; (2) Plaintiff's prior statements to medical providers that were inconsistent with her hearing testimony; (3) Plaintiff's daily activities; and (4) the objective medical evidence.  (AR 52–53.)  The Court finds that the ALJ offered "clear and convincing" reasons, supported by substantial evidence, to discount Plaintiff's credibility.

First, the ALJ determined that Plaintiff was not credible based on two doctors' notations of Plaintiff's lack of effort and exaggerated complaints of pain during examinations.  (AR 52.)  When evaluating credibility, an ALJ may consider "inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct."  *Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002) (citation and internal quotation marks omitted; alterations in the original).  As the ALJ pointed

out (AR 52), Dr. Azevedo[9] noted on May 27, 2015, and July 14, 2015, that Plaintiff had a limited AAROM "due to exaggerated complaints of pain as the range of motion within the degrees obtained were free of any restriction."  (AR 460, 465.)   On January 5, 2016, Dr. Raju noted after an examination of Plaintiff's right shoulder that Plaintiff "resents any handling at all, partly because of lack of effort."  (AR 557.)   Given that Plaintiff failed to be forthright and "give maximum or consistent effort" during some of her physical examinations, the ALJ reasonably concluded that Plaintiff's testimony as to her right upper extremity limitations was not entirely reliable.  *Thomas*, 278 F.3d at 959 (concluding that the claimant's "efforts to impede accurate testing of her limitations supports the ALJ's determinations as to her lack of credibility").

Next, the ALJ properly discredited Plaintiff's testimony because it was inconsistent with her prior statements to her medical providers.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (an ALJ's credibility finding may be based upon "ordinary techniques" of credibility evaluation, including inconsistent statements).  Specifically, the ALJ found Plaintiff's testimony that she cannot cook or drive (AR 70–71) to be inconsistent with what Plaintiff had reported to Dr. Serra during her examination five months earlier.  (AR 52.)  Dr. Serra's report indicated that Plaintiff "works around the house doing housework and also cooking, and primarily is only using her left hand.  She is not actively driving any distance, perhaps only one or two blocks."  (AR 573–74.)  As the ALJ noted (AR 52), Plaintiff's stated reasons for being unable to drive were that she cannot shift the automatic transmission into drive and her hand falls off the wheel (AR 70–71).  That Plaintiff told Dr. Serra that she can drive short distances, however, contradicts her testimony that she is unable to shift the automatic transmission into drive, *thereby not being able to drive at all*.  Therefore, considering Plaintiff's inconsistent statements about her ability to cook and drive, the ALJ properly discounted Plaintiff's testimony.  *See Alonzo v. Colvin*, No. 1:14–cv–00460–SKO, 2015 WL 5358151, at *17 (E.D. Cal. Sept. 11, 2015) (finding that one inconsistent statement "comprised a clear and convincing reason to discount a claimant's credibility").

Third, the ALJ found that Plaintiff's daily activities indicated that her impairments were not

---

[9] The ALJ attributes the treatment notes to Dr. Brose.  (AR 52.)  It appears, however, that Dr. Azevedo examined Plaintiff and authored the notes, which were also "[s]igned but not read in order to avoid delay" by Dr. Brose.  (AR 461, 466.)

as severe as she reported them to be.  (AR 52.)  An ALJ can consider a claimant's activities that undermine claims of totally disabling pain in making the credibility determination.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Thomas*, 278 F.3d at 958–59.  If the claimant is able to spend a substantial part of their day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.  *Fair*, 885 F.2d at 603.  "Even where the claimant's activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment."  *Molina*, 674 F.3d at 1113.

Here, the ALJ explained:

> [Plaintiff] . . . testified that her activities are extremely limited.  The only chore she can do is dust the table and lamps with her left hand.  She cannot go grocery shopping alone because she cannot reach up to items or reach vegetables.  If she washes dishes she drops and breaks them.  She cannot stand or sit long due to pain.  She can stand and sit for up to 25 minutes.  She walks a little bit in the back yard.  The evidence indicates more substantial activities.

(AR 52.)  In particular, the ALJ noted, and the record reflects, that Plaintiff was able to spend her day going for walks, watching television, talking to friends on the phone, visiting relatives, exercising, playing with her tablet, and sewing.  (AR 52, 548, 609, 778, 786, 855.)  The ALJ also noted that Plaintiff reported being able to perform her activities of daily living on several occasions and was in Las Vegas on December 19, 2017.  (AR 52, 794, 888.)

The Court finds that Plaintiff's activities were reasonably considered by the ALJ to be inconsistent with her alleged inability to work due to severe pain and lack of strength in her upper right extremity.  (AR 52.)  Even if some of these activities do not rise to the level of transferable work skills, as Plaintiff suggests (*see* Doc. 19 at 22–23), they are, as a whole, inconsistent with allegations of completely debilitating impairment.  *Molina*, 674 F.3d at 1113.  Accordingly, the inconsistency between Plaintiff's activity level and her complaints was a clear and convincing reason to find her testimony not credible.  *See* 20 C.F.R. § 416.929(c)(3); *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008).

1    Lastly, the ALJ found that Plaintiff's testimony was inconsistent with the objective medical

2  evidence.  (AR 52.)  "[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the

3  credibility of pain testimony after a claimant produces objective medical evidence of an underlying

4  impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of

5  medical evidence to fully corroborate the alleged severity of pain.'"  *Ondracek v. Comm'r of Soc.*

6  *Sec.*, No. 1:15–cv–01308-SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (quoting *Burch*,

7  400 F.3d at 680).  However, "[a]lthough the inconsistency of objective findings with subjective

8  claims may not be the sole reason for rejecting subjective complaints of pain, it is one factor which

9  may be considered with others."  *Salas v. Colvin*, No. 1:13–cv-00429–BAM, 2014 WL 4186555, at

10  *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

11    The ALJ cited numerous treatment notes that contradicted Plaintiff's testimony regarding

12  her right upper extremity impairments and the severity of her pain.  (AR 49–52, 53.)  For example,

13  while Plaintiff testified that she has no strength in her right hand and arm (AR 69–70), Plaintiff was

14  found to have normal muscle strength and grip strength, and no muscle atrophy, in her right upper

15  extremity.  (AR 590, 594, 595, 778, 786, 794, 803, 830, 856.)  Furthermore, the ALJ noted that

16  while Plaintiff testified to severe pain, her medical records indicated that she "was in no acute

17  distress" (AR 53) on various dates throughout 2016 and 2017 (*see* AR 710, 713–70).  Thus, the

18  Court finds that the ALJ properly considered inconsistency with the objective evidence as one of

19  several "clear and convincing" reasons to discount Plaintiff's credibility.  *See Salas*, 2014 WL

20  4186555, at *6.

21    Plaintiff has not challenged any of the reasons identified by the ALJ for discrediting her

22  testimony other than the one relating to daily activities.  (*See* Doc. 19 at 20–23.)  Because Plaintiff

23  has not addressed the remaining reasons articulated by the ALJ, Plaintiff has waived any challenge

24  as to those reasons.  *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal,

25  arguments not raised by a party in its opening brief are deemed waived."); *see also Pendley v.*

26  *Colvin*, No. 6:13–cv–01945-JE, 2016 WL 1618156, at *8 (D. Or. March 2, 2016) (noting that where

27  the plaintiff "challenge[d] some, but not all, of the reasons provided by the ALJ" and "any argument

28  against those-non challenged reasons [was] deemed waived").  As explained above, the Court finds

14

that each of the ALJ's proffered reasons was sufficient to discredit Plaintiff's testimony regarding the severity of her pain and extent of her limitations, but even assuming, as Plaintiff claims, that her daily activities did not undermine her credibility, any error is harmless because the ALJ properly discounted Plaintiff's credibility on the basis of other valid reasons.   *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (an error is harmless where there "remains substantial evidence supporting the ALJ's conclusions on . . . credibility and the error does not negate the validity of the ALJ's ultimate [credibility] conclusion") (internal citation and quotations omitted) (alteration in original); *Burkstrand v. Astrue*, 346 F. App'x 177, 179 (9th Cir. 2009) ("[e]ven if the reliance on [claimant's] day-to-day activities . . . [was] error, the other reasons put forth by the ALJ in support of the [symptom evaluation] determination would make the error harmless").

### B.      The ALJ's Evaluation of the Medical Opinions

#### 1.      Legal Standard

The ALJ must consider and evaluate every medical opinion of record.   *See* 20 C.F.R. § 404.1527(b) and (c) (applying to claims filed before March 27, 2017); *Mora v. Berryhill*, No. 1:16–cv–01279–SKO, 2018 WL 636923, at *10 (E.D. Cal. Jan. 31, 2018).   In doing so, the ALJ "cannot reject [medical] evidence for no reason or the wrong reason." *Mora*, 2018 WL 636923, at *10.

Cases in this circuit distinguish between three types of medical opinions: (1) those given by a physician who treated the claimant (treating physician); (2) those given by a physician who examined but did not treat the claimant (examining physician); and (3) those given by a physician who neither examined nor treated the claimant (non-examining physician). *Fatheree v. Colvin*, No. 1:13–cv–01577–SKO, 2015 WL 1201669, at *13 (E.D. Cal. Mar. 16, 2015).   "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citations omitted); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians." (citing 20 C.F.R. § 404.1527)).   The opinions of treating physicians "are given greater weight than the opinions of other physicians" because "treating physicians are

1  employed to cure and thus have a greater opportunity to know and observe the patient as an

2  individual." *Smolen*, 80 F.3d at 1285 (citations omitted).

3        "To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering

4  its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical

5  findings support the opinions." *Cooper v. Astrue*, No. CIV S–08–1859 KJM, 2010 WL 1286729,

6  at *2 (E.D. Cal. Mar. 29, 2010).   An ALJ may reject an uncontradicted opinion of a treating or

7  examining medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 830–

8  31.   In contrast, a contradicted opinion of a treating or examining professional may be rejected for

9  "specific and legitimate reasons that are supported by substantial evidence." *Trevizo v. Berryhill*,

10  871 F.3d 664, 675 (9th Cir. 2017) (citing *Ryan*, 528 F.3d at 1198); *see also Lester*, 81 F.3d at 830–

11  31.  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and

12  conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes*

13  *v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).   "The opinions of non-treating or non-examining

14  physicians may also serve as substantial evidence when the opinions are consistent with independent

15  clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.

16        While a treating professional's opinion generally is accorded superior weight, if it is

17  contradicted by a supported examining professional's opinion (supported by different independent

18  clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th

19  Cir. 1995) (citing *Magallanes*, 881 F.2d at 751).   The regulations require the ALJ to weigh the

20  contradicted treating physician opinion, *Edlund*, 253 F.3d at 1157,[10] except that the ALJ in any event

21  need not give it any weight if it is conclusory and supported by minimal clinical findings.  *Meanel*

22  *v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported

23  opinion rejected); *see also Magallanes*, 881 F.2d at 751.

24        **2.     Treating Physician Dr. Idoni**

25        Plaintiff alleges—and the record reflects—that Dr. Idoni was Plaintiff's treating physician.

26  (*See* AR 336.)  In a medical source statement submitted on Plaintiff's behalf on January 3, 2018,

27

28  [10] The factors include: (1) length of the treatment relationship; (2) frequency of examination; (3) nature and extent of
the treatment relationship; (4) supportability of diagnosis; (5) consistency; and (6) specialization.  20 C.F.R. § 404.1527.

Dr. Idoni opined that Plaintiff had extreme manipulative limitations as to both upper extremities. (AR 586.)

In weighing Dr. Idoni's opinion, the ALJ stated:

> Dr. Idoni completed a medical source statement in which he indicates numerous limitations . . . . He checked a box indicating that [Plaintiff] does not have significant limitations in reaching, handling or fingering, but then wrote that she can grasp, turn, perform fine manipulation and reach overhead only 5% of the time, and can reach in front of her 10% of the time bilaterally . . . . Minimal weight is afforded to this opinion.  As noted, it is internally inconsistent with regard to . . . reaching, handling and fingering.  There is also a disconnect between the limitations set forth in the opinion, and the longitudinal treatment records, which indicates mostly routine treatment with occasional references to short term back or shoulder pain.  Many of the treatment notes from Dr. Idoni's office make no mention of shoulder or back pain.  Per the doctor's statement, he appears to indicate that some of the limitations are based on the subjective report of [Plaintiff].  As noted herein, I find some of [Plaintiff's] allegations to be inconsistent with the evidence, including her performance at two consultative examinations.  The opinion is cursory, and lacks adequate explanation as to why [Plaintiff] is so limited.

(AR 53.)

Although not specifically identified by the ALJ as a basis for its rejection, Dr. Idoni's opinion is contradicted by the medical opinion evidence of non-examining medical consultant Dr. Khong, who opined that Plaintiff had no manipulative restrictions other than "[n]o freq[uent] above shoulder" reaching.  (AR 134.)  Thus, the ALJ was required to set forth "specific and legitimate reasons," supported by substantial evidence, for rejecting Dr. Idoni's opinion.  *Trevizo*, 871 F.3d at 675.

Here, the ALJ provided several specific and legitimate reasons for giving Dr. Idoni's opinion "minimal weight."  (AR 53.)  First, the ALJ explained that Dr. Idoni's opinion was internally inconsistent as to Plaintiff's manipulative restrictions.  (AR 53.)  "It is the ALJ's responsibility to consider inconsistencies in a physician opinion and resolve any ambiguity."  *Davis v. Comm'r of Soc. Sec.*, No. 1:16–CV–00777–SAB, 2017 WL 3503407, at *7 (E.D. Cal. Aug. 16, 2017) (citing *Morgan*, 169 F.3d at 603).  "The ALJ may properly reject a physician's opinion that is internally inconsistent."  *Id.* (citing *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995); *Matrunich v. Comm'r of Soc. Sec. Admin.*, 478 F. App'x 370, 372 (9th Cir. 2012).  In his medical source statement questionnaire, Dr. Idoni opined that Plaintiff had significant bilateral manipulative restrictions—

after indicating to the contrary in response to the prior question.  (AR 586.)  Dr. Idoni provided no reasoning for why he believed Plaintiff was so limited in the use of her upper extremities.  (*See* AR 586.)  In light of the inconsistency in the opinion, and the failure of Dr. Idoni to explain the contradiction, the ALJ provided a specific and legitimate reason for rejecting Dr. Idoni's opinion.

Indeed, a second sufficient reason given by the ALJ for discounting Dr. Idoni's opinion was that the opinion was "cursory" and "lack[ed] adequate explanation" as to Plaintiff's reaching and manipulative restrictions.  (AR 53.)  "A treating physician's opinion that is 'conclusory or brief' and lacks support of clinical findings may be rejected by an ALJ."  *Gomez v. Berryhill*, No. 1:17–cv–01035–JLT, 2019 WL 852118, at *8 (E.D. Cal. Feb. 22, 2019) (citation omitted).  As the ALJ noted (AR 53), Dr. Idoni's opinion was mainly given in the form of a checklist, with little information as to what clinical findings supported any part of the opinion or why any particular section on the checklist was marked (*see* AR 584–87).  *See Crane v. Shalala*, 76 F.3d 251 (9th Cir. 1996) ("The ALJ permissibly rejected . . . check-off reports that did not contain any explanation of the bases of their conclusion"); *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2003).

Next, the ALJ explained that Dr. Idoni's opinion was unsupported by his own treatment notes.  (AR 53.)  *See Connett v. Barnhart,* 340 F.3d 871, 875 (9th Cir. 2003) (a treating physician's opinion is properly rejected where the physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]").  As the ALJ observed (AR 53), the handwritten treatment notes from the Sanger Walk-In Clinic, where Dr. Idoni worked (AR 336), do not appear to mention pain in Plaintiff's right upper extremity (*see* AR 503–43, 565–71, 618–54), other than a single reference to "back pain" and right "arm pain x 2 weeks" on February 6, 2013, which precedes the alleged onset date.[11]  (AR 533.)  Plaintiff's chief complaints during her visits appear to be for lower back pain.  (*See* AR 502–03, 506, 510, 517, 520–21, 621–22, 642–43, 648–49).  Therefore, Dr. Idoni's treatment notes provided no basis for his opined manipulative restrictions.

The ALJ also rejected Dr. Idoni's opinion in part because Dr. Idoni appeared to rely on

---

[11] The Court notes that the identity of the physician who authored the referenced treatment records from the Sanger Walk-In Clinic is not discernible from the signature on the records.

Plaintiff's subjective reports of pain—Dr. Idoni wrote "subjective" next to some of his opined limitations on the questionnaire (AR 585, 586)—and the ALJ had determined that some of Plaintiff's allegations were "inconsistent with the evidence." (AR 53.) "[A]n ALJ may usually reject a physician's opinion when it lacks support from objective medical findings or relies upon the properly discounted subjective reports of a claimant." *Smith v. Berryhill*, 752 F. App'x 473, 475 (9th Cir. 2019) (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216–17 (9th Cir. 2005); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding that a medical opinion based on subjective complaints could be properly rejected where the subjective complaints themselves had been refuted). In light of the ALJ's proper adverse credibility determination, as discussed above, the ALJ did not err in rejecting Dr. Idoni's opinion on the grounds that it relied on Plaintiff's subjective reports.

Plaintiff challenges only the ALJ's reasoning regarding Dr. Idoni's reliance on Plaintiff's subjective reports. (*See* Doc. 19 at 11, 16–17.) Because Plaintiff has failed to address any of the ALJ's remaining reasons, any challenge to those reasons have been forfeited. *See Smith*, 194 F.3d at 1052. Therefore, even assuming the ALJ erroneously rejected Dr. Idoni's opinion based on its reliance on Plaintiff's subjective reports, any error was harmless in light of the ALJ's other articulated reasons, which the Court finds to be specific and legitimate and supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162.

### 3.     Examining Physicians Drs. Raju and Serra

On January 5, 2016, Dr. Raju performed an internal medicine evaluation of Plaintiff and opined that Plaintiff was unable to lift or carry any weight with her right upper extremity or perform any manipulative activities with her right hand. (AR 559.) On December 13, 2017, Dr. Serra conducted a comprehensive orthopedic evaluation of Plaintiff. (AR 573–76.) Dr. Serra opined that Plaintiff was unable to use her right upper extremity and could never reach overhead or forward. (AR 576.)

In affording "reduced weight" to Dr. Raju's opinion and "[m]inimal weight to Dr. Serra's opinion, the ALJ explained that both opinions relied on Plaintiff's subjective reports and were inconsistent with other medical findings in the record. (AR 48–49, 51.) As with Dr. Idoni's opinion,

although not specifically identified by the ALJ as a basis for its rejection, Drs. Raju's and Serra's opinions are contradicted by non-examining medical consultant Dr. Khong's opinion that Plaintiff had no manipulative restrictions other than "[n]o freq[uent] above shoulder" reaching.  (AR 134.) Therefore, the ALJ was required to set forth "specific and legitimate reasons," supported by substantial evidence, for rejecting Drs. Raju's and Serra's opinions.  *Trevizo*, 871 F.3d at 675.

Here, the ALJ assigned "reduced weight" to Dr. Raju's opinion and "minimal weight" to Dr. Serra's opinion because both examining physicians appeared to rely on Plaintiff's subjective reports of pain, and both opinions were inconsistent with the objective medical record.  (AR 48, 51.)  As discussed above, and contrary to Plaintiff's assertion (*see* Doc. 19 at 17), it was not error for the ALJ to discredit Drs. Serra's and Raju's opinions on the basis that they relied on Plaintiff's subjective complaints, where the ALJ had properly determined that Plaintiff's subjective complaints were unreliable.  *Tonapetyan*, 242 F.3d at 1149.

In any event, the ALJ also explained that Drs. Serra's and Raju's opinions were inconsistent with the objective medical evidence, which Plaintiff does not contest, and the Court finds this to be a specific and legitimate reason, supported by substantial evidence, for discounting the two opinions.  *See Batson*, 359 F.3d at 1195 (citing *Tonapetyan*, 242 F.3d at 1149); *Thomas*, 278 F.3d at 957 (citing *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)).

With regard to Dr. Raju's opinion, the ALJ explained that it was inconsistent with medical evidence indicating that Plaintiff had full range of motion and no atrophy in her right upper extremity.  (AR 49.)  Specifically, on March 21, 2016, just two months after her examination with Dr. Raju, Plaintiff was found to have "full and unimpeded" range of motion "with some pain on end-range abduction" in her right shoulder, in addition to normal tone and 5/5 muscle strength in her right upper extremity.  (AR 595.)

As for Dr. Serra's opinion, the ALJ found it to be inconsistent with "the numerous notations in the treatment record where [Plaintiff] denied pain and had no weakness or neurological deficits, no atrophy, no weakness, or reduced range of motion on [various dates], and even on October 31, 2017, just six weeks prior to the exam by Dr. Serra."  (AR 52.)  An examination in October 2016 found Plaintiff to have full range of motion and 5/5 strength in her right upper extremity.  (AR 589–

90.)  Plaintiff had no atrophy or weakness during other examinations in November 2016 through October 2017.  (*See* AR 777–856.)  As noted by the ALJ (AR 51), these other findings of normal muscle strength contradicted Dr. Serra's finding of 2/5 muscle strength.

The Court also notes that the ALJ properly discounted Dr. Serra's opinion for the additional reason that the opined limitations were inconsistent with Plaintiff's activities.   (AR 51). Specifically, Dr. Serra opined that Plaintiff "had limitations on the ability to travel," but the week after Plaintiff's examination with Dr. Serra, she was in Las Vegas.  (AR 896.)  "An ALJ may discount a medical opinion that is inconsistent with a claimant's reported functioning."  *Lopez v. Saul*, No. 1:19–CV–00971–BAM, 2020 WL 6526197, at *9 (E.D. Cal. Nov. 5, 2020) (collecting cases); *Magallanes*, 881 F.2d at 754 (ALJ can properly consider conflicts between physician's opinion and the claimant's own testimony in rejecting the physician's opinion).

In challenging the ALJ's evaluations of Drs. Idoni's, Raju's, Serra's and Moses's (discussed below) opinions, Plaintiff contends the ALJ was "erroneously 'playing doctor'" in her review of the record and "failed to provide 'specific and legitimate' reasons and account for the 'somatic' nature of [Plaintiff's] significant pain and limitation." (Doc. 19 at 15.)  The standard of reviewed employed by this Court, however, is whether the ALJ articulated specific and legitimate reasons, supported by substantial evidence, for discounting particular medical opinions, *Trevizo*, 871 F.3d at 675, and as discussed above, the Court finds that the ALJ provided multiple sufficient reasons, with several of them unchallenged by Plaintiff.  Although Plaintiff may disagree with the ALJ's interpretation of the medical evidence (*see* Doc. 19 at 11–15), it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff.  *See Rollins*, 261 F.3d at 857 (citing *Fair*, 885 F.2d at 604).

### 4.     Examining Physician Dr. Moses

Plaintiff alleges that Dr. Moses was her treating orthopedic surgeon (Doc. 19 at 3) but the record does not reflect that Dr. Moses provided Plaintiff with any treatment.  The only notes or statements in the record from Dr. Moses are his "Agreed Medical-Legal Evaluation" and re-evaluation conducted for Plaintiff's worker's compensation case.  (*See* AR 403–21, 423–40.)  As

1  Dr. Moses personally examined Plaintiff for his reports (AR 410–12, 429–30), the Court concludes

2  that Dr. Moses was an examining physician, not a treating physician.

3      In his January 24, 2014 evaluation, Dr. Moses opined that Plaintiff was able to work but with

4  "no use of the right upper extremity."  (AR 414.)  In affording Dr. Moses's initial opinion "reduced

5  weight," the ALJ explained that the opinion was a "temporary opinion" related to Plaintiff's

6  condition at the time of the evaluation and there was no indication that Plaintiff's impairments were

7  "predicted to last 12 consecutive months."  (AR 54.)

8      Dr. Moses also conducted a re-evaluation of Plaintiff in November 2014 and opined that

9  Plaintiff can "work with using the right upper extremity as a minimal assist" but cannot engage in

10  "repetitive activities with the left or right upper extremity."  (AR 433.)  Dr. Moses further opined

11  that Plaintiff can lift with both upper extremities five pounds frequently and ten pounds occasionally,

12  and she "should avoid working above shoulder level."  (AR 433.)  The ALJ did not address this

13  second evaluation in her opinion, and the Commissioner acknowledges this omission but contends

14  it was harmless.[12]  (Doc. 23 at 19.)  The Court finds that the ALJ erred in failing to address Dr.

15  Moses's November 2014 opinion, *see Tommasetti*, 533 F.3d at 1041 ("The ALJ must consider all

16  medical opinion evidence"), and turns to whether the error was harmless.

17      The Ninth Circuit "ha[s] long recognized that harmless error principles apply in the Social

18  Security Act context." *Molina*, 674 F.3d at 1115 (citing *Stout*, 454 F.3d at 1054); *see also Garcia*

19  *v. Comm'r of Soc. Sec.*, 768 F.3d 925, 932 n.10 (9th Cir. 2014) (stating that the harmless error

20  analysis applies where the ALJ errs by not discharging their duty to develop the record).  As such,

21  "the court will not reverse an ALJ's decision for harmless error." *Tommasetti*, 533 F.3d at 1038

22  (citing *Robbins*, 466 F.3d at 885).  An error is harmless "where it is inconsequential to the ultimate

23  nondisability determination." *Molina*, 674 F.3d at 1115 (citations omitted).  "In other words, in

24  each case [courts] look at the record as a whole to determine whether the error alters the outcome

25  of the case." *Id*.  "[T]he nature of [the] application" of the "harmless error analysis to social security

26

27  [12] The Court notes that it was the Commissioner who pointed out in his briefing that the ALJ omitted any discussion of Dr. Moses's November 2014 opinion.  (*See* Doc. 23 at 19.)  In her opening brief, Plaintiff mistakenly analyzes the

28  ALJ's comments about Dr. Moses's January 2014 opinion as though those comments were made about Dr. Moses's November 2014 opinion.  (*See* Doc. 18 at 18.)

1   cases" is "fact-intensive—'no presumptions operate' and '[courts] must analyze harmlessness in

2   light of the circumstances of the case.'"  *March v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015)

3   (quoting *Molina*, 674 F.3d at 1121).  "[T]he burden of showing that an error is harmful normally

4   falls upon the party attacking the agency's determination."  *Shinseki*, 556 U.S. at 409 (citations

5   omitted).

6        The Court concludes that the ALJ's failure to address Dr. Moses's re-evaluation in

7   November 2014 was harmless, as the ALJ accounted for similar opinions in formulating Plaintiff's

8   RFC and making the ultimate nondisability determination.  *See Cantrall v. Colvin*, 540 F. App'x

9   607 (9th Cir. 2013).  As noted above, Dr. Moses opined that Plaintiff could use her right upper

10  extremity "as a minimal assist" but could not engage in repetitive activities and "should avoid

11  working above shoulder level."  (AR 433.)  Similarly, Dr. Idoni opined that Plaintiff could engage

12  in fingering, handling, and overhead reaching only five percent of the time with her right upper

13  extremity (AR 586); Dr. Raju opined that Plaintiff could not use her right upper extremity for any

14  lifting, carrying, and manipulative activities (AR 559); and Dr. Serra opined that Plaintiff could

15  never lift, carry, push, pull, or reach overhead with the right upper extremity, but could occasionally

16  reach forward and perform handling, fingering, and feeling (AR 576).

17       More importantly, Plaintiff fails to explain how consideration of Dr. Moses's November

18  2014 re-evaluation would have resulted in a reduced RFC, as Dr. Moses's subsequent opinion

19  supports a less restrictive RFC than his initial opinion.  *See Molina*, 674 F.3d at 1111 ("The burden

20  of showing that an error is harmful normally falls upon the party attacking the agency's

21  determination."); *Shinseki*, 556 U.S. at 409.  Dr. Moses opined in January 2014 that Plaintiff could

22  work with "no use" of her right upper extremity (AR 414), whereas he opined in November 2014

23  that Plaintiff could use her right upper extremity "as a minimal assist" and lift five pounds frequently

24  with both upper extremities (AR 433).  Therefore, the Court finds the ALJ's failure to consider Dr.

25  Moses's November 2014 opinion to be harmless error.

26                    **V.    CONCLUSION AND ORDER**

27       Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial

28  evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in

1   favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Lourdes

2   Rico.

3

4

  IT IS SO ORDERED.

5

6   Dated:  **February 17, 2021**                                    /s/ *Sheila K. Oberto*

7                                                                   UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28